All right, let's hear counsel in ACLU versus NSA. Thank you, Your Honors, and may it please the court. Ashley Gorski for plaintiffs, American Civil Liberties Union and American Civil Liberties Union Foundation. This case fundamentally concerns the public's right to know what the law is. Plaintiffs are seeking seven legal memoranda that explain what law the executive branch applies when it conducts surveillance of Americans under Executive Order 12333. The government has failed to meet its burden to establish each of its withholdings under FOIA Exemptions 1, 3, and 5. And I'd like to start today with Exemption 5 and the withholdings in OLC 10. This court has explained that the working law and adoption doctrines are two paths to the same result, the loss of Exemption 5's protections. Regardless of which path the court takes here, it is clear that the Attorney General and the President accepted and adopted OLC 10 as the definitive legal justification for domestic warrantless wiretapping, a program known as Stellar Wind. And OLC 10 plays a very unusual role here. Given the novelty and the breadth of this surveillance, the President established a formal authorization process whereby the Attorney General certified the program as to form and legality and the President issued presidential authorizations on the basis of that certification. And OLC itself wasn't making policy decisions or setting precedent. It was providing advice as to the legality of the program. If I understand both of your positions accurately and correct me if I don't. Your Honor, OLC was setting a kind of precedent and the fact that OLC 10 served as the basis for 19 Attorney General certifications as to the legality of the program and 19 presidential authorizations directing the implementation of the surveillance indicates that it functioned in that manner. However, it did not in itself implement policy. Yet this court and the DC Circuit have been clear in cases like Brennan Center, Tax Analyst 1, and Coastal States that a document can be working law even if it leaves a decision maker with choices or flexibility. It need not reflect a final programmatic decision. It's enough that it represents the final legal view of the agency. In terms of the DC Circuit's opinion in Electronic Frontier, how does your position square with that precedent if we found it persuasive? Your Honor, that case institutionally, we certainly disagree with its reasonings, but in this here, we are not arguing that all OLC memoranda are necessarily working law. On the facts of this case, it is clear that this memorandum was adopted. So even if this court were to require adoption of OLC memoranda in order to say that the OLC memorandum functions as working law, on the facts of this case, it could make that holding. And who was it that was bound by these memoranda? Following the Attorney General certification, DOJ was bound. OLC 10 reflected DOJ's view of what the law was. It was a basis for agency action. And then following presidential authorizations, OLC 10 reflected the working law of the executive branch and was adopted as the law of the executive branch. And the IG report confirms this and provides some of the clearest possible evidence of adoption. It describes OLC 10 under the header, a new legal basis for the program is adopted. In addition, the IG report describes how the Attorney General relied on the predecessor memoranda to OLC 10, which were drafted by John Yoo, how OLC 10 came to understand that that analysis was flawed and how it reassessed what the IG report describes as the quote, legal rationale for the program and how OLC 10 superseded John Yoo's analysis. Sorry, are you relying on the adoption argument as well as the exception 5? Yes, Your Honor. Regardless of which analytical path the court takes here, it is clear that OLC 10 cannot be withheld under exemption 5 because it was both adopted and the working law of the executive branch. And I noticed in your memorandum of law that you asserted that you had preserved the adoption argument because it had been raised generally below, but I confess I could not find that where or how it had been raised below. Yes, Your Honor. I'm happy to point to some citations in which we discussed the adoption argument. Plaintiff's memorandum in support of its first cross motion for summary judgment at page 17, note 7. Plaintiff's reply at 3 to 4, 9, 10 and note 5. The first is ECF number 70. The second is ECF number 82. Plaintiff's memorandum in support of second cross motion for summary judgment at 8, 9 and note 7, pages 12 through 15 and note 10, ECF number 107. My, my recollection or understanding though, was that you were talking about adoption primarily to rebut your adversary's argument about adoption, and it did not seem that you were making the argument affirmatively yourself. Your Honor, our intention was to make the argument affirmatively. It is true that the briefing focused more on the working law doctrine, but plaintiffs have urged the court to recognize below and hear that OLC 10 was adopted as well as the law of the executive branch. With respect to each of exemptions 1, 3 and 5, the government cannot withhold all of the redacted material in OLC 10 because it has almost certainly disclosed the same or materially similar information in the IG report, thus precluding its ability to rely on any of these exemptions. As in New York Times 1, reprocessing here is the most efficient and sensible approach to the government's post request disclosures. They go to the heart of the issue and plaintiffs should not be required to file a new request and be sent to the back of the line only to litigate the same issues and to return here three years from now. This is especially true given that the government has conceded that it may be withholding information in OLC 10 that it has already disclosed in the IG report. And moving on to the approval packages, the government's blanket withholdings of these packages under exemptions 1 and 3, which I'll focus on today, are also improper given the length and the subject matter of the memoranda. It is a near certainty that they contain pure legal analysis that can be segregated from properly exempt material. And I want to be very clear here about what plaintiffs are seeking. In New York Times 1, this court explained that in some circumstances, the very fact that legal analysis is given with respect to a particular operation could reveal the likelihood of that operation. Plaintiffs are not seeking legal analysis that falls into either of those two categories. What plaintiffs are seeking is the third category of legal analysis that was contemplated by that opinion, legal analysis that can be segregated from properly exempt fact. This court has held that legal analysis is not an intelligent source or good source. With respect to Exemption 1, the government has to make its whole of the government has to establish that disclosure would likely result or be expected to result in damage to national security. And when it comes to these documents, it's almost certain that these documents contain what you refer to as pure legal analysis. What's what is the basis for that supposition? The subject matter of the documents and the length, Your Honor. These memoranda average more than 30 pages. NSD 13 contains a legal memo that is 43 pages long. And given the other surveillance memoranda that we have seen authorizing surveillance, OLC 8, for example, which the government released after we filed our opening brief on this appeal. OLC 8 just has plenty of sections of pure legal analysis, one of which we've highlighted in the brief. And we know that in these surveillance authorization memoranda, the government tends to discuss certain legal principles, constitutional principles, statutory principles at a high level of generality. And that provides the basis for a more granular discussion in which the facts of the case are discussed at greater length. And plaintiffs are interested in those high-level discussions because they reflect the agency's view of what the law is, and FOIA requires them to be disclosed because they do not specifically fall within a withholding statute under Exemption 3, and they are not properly classified under Exemption 1. I see that my time has expired. Thank you. I guess this is as high as it goes. Good afternoon. May it please the Court. My name is J.D. Barnea. I'm an assistant U.S. attorney and I'm representing the government in this case. This case concerns the government's ability to withhold advice given to high-level government decision-makers about sensitive and classified intelligence programs. These exemptions are some of the most important exemptions under FOIA, Exemptions 1, 3, and 5. I'd like to start with the approval packages which were discussed at the end of my colleague's discussion. The ACLU takes the position that these memoranda are lengthy and concern intelligence programs and therefore they must contain legal analysis that is divorced from the facts of the intelligence programs at issue, but in fact the NSA has conducted a segregability analysis of these documents and has concluded that there are no segregable portions of the legal analysis, and this is not surprising. Unlike OLC-8, which concerns a program whose existence is publicly and officially acknowledged, the Stellar Wind Program, these memoranda contain concerned programs that have never been officially acknowledged and about which nothing is known publicly through any official acknowledgments. And so unlike a program in which the general parameters are known and therefore some of the background legal analysis can be made public, at least under Exemptions 1 and 3, here we have programs about which there have been no official acknowledgments and therefore none of the legal analysis can be segregated. This is not surprising given this Court's decision in the New York Times 3 case in which considered several OLC opinions that relate to what's described in the public record in relatively little detail as documents that analyze another document whose contents are not known, and because the OLC  memoranda is not given in a vacuum, it is given pertaining to a particular program or legal question, and so if a writer of a memorandum is considering whether a particular intelligence program ought to be authorized or is legal, the legal analysis, even in the background section, will be tailored to the specifics of that program. This is not—no one's writing a legal horn book, but rather a memorandum regarding the particular program, and so it is not surprising that this Court and several district courts have considered, in cases where the underlying program or information is not known publicly and has not been officially acknowledged, that no part of a legal memorandum discussing that OLC 10—I observed that OLC 8 is no longer at issue because there's been reprocessing. I saw in your papers a discussion about why there hadn't been reprocessing of OLC 10. Has that changed at all? Is there any consideration or thought being given to reprocessing OLC 10 at this point? No, Your Honor. There was a reprocessing of OLC 10 in light of a variety of developments, but OLC 10 has been reprocessed many times, including several times as a result of litigation in other courts and was reprocessed shortly before the FOIA request in this case. The executive order that governs classification does not require documents to be reprocessed more than once every two years, and so the reprocessing at issue in this case took place only a few months before it was released again in this case. The ACLU makes some interesting arguments about subsequent disclosures, including of OLC 8, that could have an impact on what the status of OLC 10 is. Well, Your Honor, OLC 10 again is a—and we're here transitioning to Exemption 5, of course—OLC 10 is an internal legal memorandum that provides legal advice, and as we can see from the public section about the legality of the Stellar Wind program, there are parts of that analysis that have been made public through official disclosures and others, and the rest of it remains covered by Exemption 5. The fact that more may be known today than it was a few years ago about this program does not negate the underlying Exemption 5 privileges. If I were to have written a legal memorandum five years ago, you know, advising my client about how to handle a case, even if, you know, we've now had a trial and all some of the facts of the case are now known, my legal memorandum would remain privileged to this day, even if, you know, everyone's heard the testimony and we've made all of our arguments. But if there were a new FOIA request today, that could change, right? To some extent. There's no guarantee that even if, say, more facts are known about the Stellar Wind program than were known before, that Exemption 5 would still protect the ability of a government attorney to write a privileged memorandum to the Attorney General about those facts, and the fact that those facts are now publicly known does not negate Exemption 5. It may go into a different consideration as to whether those facts can be withheld under Exemptions 1 or 3, now that they're no longer classified and they've been officially acknowledged. But Exemption 5 sort of stands in a different light. There may well be, if OLC had to be reprocessed, there could well be some additional disclosures, but I wouldn't want to think that there would be extensive additional disclosures. There was even a concession, I thought, in your papers that there may be material that would be disclosed. Yes, Your Honor, and that is certainly something that one of our declarants said in the District Court, and I'm not walking away from that, but my sense is that it wouldn't necessarily be anything extensive that would be revealed as a result of that type of reprocessing. So I don't want anyone to labor under a misconception that if we were to reprocess OLC 10 in response to a request from the court, that it would sort of result in a dramatic, you know, revelation of most of the content that's been withheld there. Can you help me try to understand the role of the OLC? An office of great, very high reputation, a reputation which members of OLC more than share. The OLC memos advise the Attorney General about whether he should approve a certain surveillance program. Is that right? There's only one OLC memo at issue here, which is OLC 10, and yes, as we've all seen, it advises that the program at issue is constitutional and goes through a whole analysis to reach that. And the Attorney General, of course, is superior to the OLC. Is that right? That's right. So the Attorney General is not necessarily bound by the reasoning or the conclusions of the OLC. That's exactly right, Your Honor. And in your view, is that sort of the end of the analysis on that particular memorandum? Well, actually, there's a further step, which is that the decision at issue in OLC, with regard to OLC 10, was the decision to authorize the Stellar Wind program. That decision was made by the President, not the Attorney General. The President could have authorized the program for any number of reasons, but certainly one of the things that the President was allowed to consider in making that determination is whether the program was legal. In making that determination, he was entitled to rely on the The Attorney General, in turn, may have, you know, I'm sure, read the OLC memorandum and that might have formed a part of his thinking, but certainly the President never said, I am authorizing this program because of legal analysis conducted by the OLC. There's no evidence, in fact, that the President ever even saw that legal advice, let alone adopted it as his own basis for the decision. How does this differ from the La Raza case? The two things that happened in La Raza appear to be that the government relied on the OLC advice, right? The government relied on the OLC advice and explicitly told the public that it was, that the OLC advice was the basis of its action. And that, I think, is the most important part in that case. And that's not what happened here? Precisely. There's no public statement from the President that he was authorizing the program based on the OLC advice, nor is there any statement even by the Attorney General, who's not the final decision maker, that he made his certification as to legality based on the reasoning of the OLC memo. Attorney General Gonzalez, when, in his public statement on the legal underpinnings of the, of the Stellar Wind program, did, you could say that he appeared to rely, at least in part, on the reasoning that one would presume would be contained in the OLC 10. Your Honor, he said that he had read the memo and that he agreed with its story that, that the, that the reason why he certified the legality of the program was because he sort of was adopting the reasoning of the OLC memo as his own. And that, that's the sort of thing that this Court has looked for in the past in terms of finding express adoption. The OLC, of course, does not set a policy for the President or even for the Attorney General. It certainly writes memos that are very useful for the, for many government actors, but it's only when the actual decision maker takes some statement that officially adopts the, the reasoning of a memorandum such as . . . And here, that decision maker would be the President. That's right. With regard to OLC 10, yes, it would be. Now, the, the District Court did not look at the disputed documents in camera. That's correct, Your Honor. The FOIA explicitly authorizes a review in camera, and presumably reviewing it in camera would make things easier, wouldn't it? Your Honor, this Court has many times said that courts, District Courts and Courts of Appeals are entitled to view documents in camera, but that is a disfavored tactic and that the, the better approach is to review the government's declaration. And if a District Court were to determine that declarations are insufficient to request additional declarations as much as possible on the public record so that both parties can litigate their significance. But if, after all that, there's nothing left to do but review the documents in camera, that's certainly an option. So, the fact that the District Court didn't look at the, at the disputed documents in camera doesn't foreclose our conducting such a review, does it? I don't believe that it does, Your Honor, but again . . . Why shouldn't we conduct such a review? Because there's nothing in the record that suggests that any of these exemptions are inapplicable, and the government's arguments, such as those that we've been discussing here, I think, make clear that exemptions 1, 3, and 5 apply respectively to the documents. And so, the government would respectfully suggest that there's no reason to look at the documents, but, of course, the Court can have its own determination on the subject. Okay. I see that my time has expired a few minutes ago, so unless there's any further questions. Ms. Gorski, you've reserved some time. Thank you, Your Honor. My friend just acknowledged that government actions can result in adoption, and here we have not only government actions, we have two decision makers, the Attorney General and the President, relying on OLC-10 as the definitive legal rationale for this program, but we also have government statements, and the Court in La Raza was clear that, in assessing whether a document has been adopted, a court should look to all relevant facts and circumstances, and that court rejected the government's argument that the only relevant statements were from an agency decision maker. Instead, the Court in La Raza looked to statements by non-agency decision makers in assessing whether adoption had taken place. And here, the IG report, again, provides some of the clearest evidence of adoption. It describes OLC-10 under the header, a new legal basis for the program as adopted, and I want to take a step back and speak, too, to the structure of the decision-making process here. The fact that the President never said that he adopted OLC-10 is not dispositive of the adoption or the working law question. Given the gravity of this program, that it involved warrantless wiretapping of Americans on U.S. soil, arguably in contravention of FISA, the President required and then accepted Attorney General certifications on a periodic basis, very frequently, every 30 to 45 days. And this formal process was specifically designed to tie the program to a set of legal reasons, to put the program on firm legal footing. And this shows that the legal reasoning of OLC-10 is inseparable from the Attorney General certifications and the Presidential authorizations. And notably, when the Attorney General came to disagree with the reasoning in John Hu's legal memoranda, he refused to authorize the program. And the White House refused to authorize the program to conform to OLC's revised legal reasoning, which is reflected in OLC-10. All of these facts are indicative of adoption. I'd like to turn very briefly to the government's waiver argument, if I may. The government contends that waiver requires disclosure of communications, not information, citing dicta in a non-FOIA case, United States v. Cunningham. This is an unduly narrow view of the waiver doctrine. In New York Times 1, this court considered an array of statements in assessing whether particular information had been disclosed to the public, and by virtue of that disclosure, lost its exemption 1 and 5 protections. And those statements included statements about facts. Those statements were not themselves privileged communications. Accordingly, plaintiffs are asking the court to order reprocessing of OLC-10 in light of the fact that official acknowledgments have precluded the government's ability to rely on OLC-10. The government cannot assert exemption 5 over OLC-10 because it was adopted and was the working law of the executive branch. And finally, hold that the government has failed to meet its burden to establish its exemptions over the approval packages or, in the alternative, review those packages in camera or remand to the district court for that review. Thank you very much.  Am I right that you're arguing that reliance on legal advice counts as express adoption? Is that a fair characterization? Your Honor, acceptance of legal advice can constitute adoption of the document. I think working law and adoption can be thought of as different. When it comes to how a document was actually used in practice, then it's analyzed under the rubric of working law. When the evidence consists of public statements, it tends to be analyzed under the rubric of adoption. But it's clear from the case law that adoption can be internal as well and does not necessarily require a public statement. Am I right to think that you're arguing that if the President gets advice from his lawyers and then follows that advice, the attorney client privilege disappears? Certainly not, Your Honor. Not in every circumstance. In the specific context of the formal authorization process that existed here, the acceptance, the President's acceptance and reliance on OLC-10 through the Attorney General certifications resulted in the adoption of OLC-10 as the working law of the executive branch. So if an agency is asked about the lawfulness of its policy and it says something to the effect, we've checked it with agency counsel, that advice would no longer be privileged. Your Honor, I think it would depend on the facts and circumstances. You can imagine that that's very common. That would be a very understandable, almost day-to-day, almost banal interaction of an agency with the public. Your Honor, I don't think that statement alone would be dispositive of agency adoption. Simply saying we've checked it with the agency does not necessarily reflect an adoption of the agency's reasoning. This case, however, reflects a clear adoption of the reasoning of OLC-10. So what would it take for the privilege to no longer exist beyond saying we've checked it with agency counsel? Coming to the facts of this case . . . Yes, okay. Yes. I think here, what you have is evidence from a DOJ IG report, an interagency, this portion of the IG report is an interagency IG report to which DOJ contributed, that says OLC-10 served as the legal basis for the program. And that in itself, I think, is key evidence of adoption. The formal authorization process and the reliance on the reasoning of OLC-10 and the purpose of that process, which was to tie the decision making about the program to a legal justification, a legal scaffolding, a set of clear legal reasons, itself reflects adoption of the reasoning of OLC-10. And that's what distinguishes this case from a more mundane or banal hypothetical in which an agency simply says, you know, we've conferred with counsel and then proceeds to discuss a policy. Thanks very much, Ms. Gorski. Thank you. We'll reserve the decision and we'll take a recess and return with the regular day calendar in due course.